IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NICHOLAS J. DELZOTTI, as
Assignee for and on behalf of
VON MORRIS CORPORATION

            Plaintiff,

     v.

ERIC MORRIS, SHIRLEY MORRIS,
MARK WOJCIK, CPA, VM
DECORATIVE, LLC, ERIC MORRIS
AND COMPANY, LLC, VON MORRIS
DECORATIVE HARDWARE, LLC, ABC
CORPS 1-10,

          Defendants.

HONORABLE JEROME B. SIMANDLE

Civil No. 14-7223 (JBS/AMD)

**OPINION**

APPEARANCES:

Eric R. Perkins, Esq.
Alfred R. Brunetti, Esq.
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
40 West Ridgewood Avenue
Ridgewood, NJ 07450
    Attorneys for Plaintiff

Marshall T. Kizner, Esq.
Timothy P. Duggan, Esq.
STARK & STARK PC
993 Lenox Drive
Lawrenceville, NJ 08648
    Attorneys for Defendants Eric Morris, Shirley Morris, VM
    Decorative Company, LLC, Eirc Morris and Company, LLC, and
    Von Morris Decorative Hardware, LLC

Adam E. Gersh, Esq.
John G. Koch, Esq.
FLASTER GREENBERG PC
1810 Chapel Avenue West
Cherry Hill, NJ 08002
    Attorneys for Defendant Mark Wojcik, CPA

**SIMANDLE**, Chief Judge:

## I.    INTRODUCTION

Von Morris Corporation ("VMC") was a company that manufactured, distributed, and sold decorative hardware for many years, and its sole shareholder was Eric Morris. After VMC began to experience financial difficulties in 2011, it was forced in February of 2013 to deed its assets to Plaintiff Nicholas Delzotti through a Deed of Assignment for the Benefit of Creditors. Delzotti, on behalf of VMC, brings this action alleging that Defendants Eric Morris and his mother, Shirley Morris, along with VMC's CPA, Mark Wojcik, devised and carried out a fraudulent scheme to transfer VMC's remaining assets out of the company after VMC first began to experience financial trouble, in order to avoid paying VMC's creditors. Delzotti alleges that between 2011 and 2013, Defendants transferred an excess of $1.5 million, concealed as loans and repayments, out of VMC's coffers to Eric Morris, his mother Shirley Morris, and three Limited Liability Companies[1] created by the Defendants for the sole purpose of facilitating the scheme. Plaintiff brings a variety of state law claims against Defendants, including violations of the New Jersey Uniform Fraudulent Transfer Act

---

[1] These companies are Defendants VM Decorative, LLC; Eric Morris and Company, LLC; and Von Morris Decorative Hardware, LLC.

(Counts One and Two), N.J.S.A. 25:2-25(a) & (b), and the New Jersey RICO statute (Count Three), N.J.S.A. 2C:41-2, conspiracy to commit a tort (Count Four), aiding in the commission of a tort (Count Five), conversion (Count Six), accounting (Count Seven), alter ego liability (Count Eight), and successor liability (Count Nine).

Presently before the Court is the motion of all Defendants except Wojcik under Rule 12(b)(6), Fed. R. Civ. P., to dismiss the Complaint in full. [Docket Item 5.] For the reasons explained below, the Court will dismiss the New Jersey RICO claim (Count Three) because Plaintiff has failed to explain how the conduct here constitutes "racketeering activity" defined in N.J.S.A. 2C:41-1a. The Court will also dismiss the claim for conspiracy to commit a tort (Count Four) because Plaintiff has not pleaded special damages, and will dismiss the claim for accounting (Count Seven) because an adequate remedy exists through the normal discovery process. The Court will deny Defendants' motion with respect to all other claims.

## II.   BACKGROUND

The facts below are taken from Plaintiff's Complaint.[2]

---

[2] Plaintiff originally filed his Complaint in the Superior Court of New Jersey and Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441, asserting diversity jurisdiction under 28 U.S.C. § 1332(a)(1). 28 U.S.C. § 1332(a) provides district courts with "original jurisdiction of all

[Docket Item 1.] Eric Morris was the principal and sole

shareholder of Von Morris Corporation ("VMC"), a business

entity formerly engaged in the manufacture, sale, and

---

civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between – (1) citizens of different States."

The Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount of controversy exceeds $75,000. Plaintiff Nicholas Delzotti is the Assignee of Von Morris Corporation, which has a principal place of business in Camden, New Jersey. (Compl. ¶ 1.) Defendants Eric Morris and Shirley Morris are citizens of Pennsylvania (Compl. ¶¶ 2-3), and Mark Wojcik is a CPA licensed in Pennsylvania. (Compl. ¶ 4.) Defendants asserted that diversity jurisdiction was proper because Eric Morris and Company, LLC, VM Decorative, LLC, and Von Morris Decorative Hardware, LLC were citizens of Pennsylvania since their sole shareholder, Shirley Morris, was a citizen of Pennsylvania. (Notice of Removal [Docket Item 1] ¶¶ 7, 8, & 9.)

"The citizenship of partnerships and other unincorporated associations is determined by the citizenship of its partners or members." Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010) (citing Swinger v. Allegheny Energy, Inc., 540 F.3d 179, 182 (3d Cir. 2008)). Because a limited liability company "should be treated as a partnership for purposes of establishing citizenship," "the citizenship of an LLC is determined by the citizenship of its members." Id. (noting that although limited liability entities resemble corporations in many respects, every federal court of appeals to address the question has concluded that a limited liability company should be treated as a partnership); see also Brauser Real Estate, LLC v. Meecorp Capital Markets, LLC, 2012 WL 1079540, at *3-4 (D.N.J. Mar. 30, 2012) (examining the citizenship of members of an LLC for purposes of establishing diversity jurisdiction).

Because the sole member of Eric Morris and Company, LLC, VM Decorative, LLC, and Von Morris Decorative Hardware, LLC, is Shirley Morris, a citizen of Pennsylvania, the LLC Defendants are citizens of Pennsylvania. Since all Defendants are citizens of Pennsylvania and Plaintiff is a citizen of New Jersey, and the amount-in-controversy is greater than $75,000, diversity jurisdiction is established.

distribution of decorative hardware and ornamentals. (Compl. ¶¶ 8-9.) VMC operated for several years but began to experience financial trouble in 2011. Finally, in February of 2013, after determining that VMC no longer had the means to continue its business, VMC's Board of Directors authorized Morris to surrender all of the company's assets and liabilities to an assignee, Plaintiff Nicholas Delzotti, for the benefit of VMC's creditors. (Id. ¶¶ 12-17.)

Plaintiff alleges that VMC's financial difficulties "were the manifestations of a façade" facilitated by Morris and his mother, Shirley Morris, and VMC's long-time accountant, Mark Wojcik. (Id. ¶¶ 19, 22-23.) All three are named as defendants in the Complaint.

Plaintiff alleges that all three defendants participated in a fraudulent scheme "to abscond with VMC's assets and shed VMC's lawful creditors." (Compl. ¶ 20.) The financial scheme "was designed to divert valuable property and significant sums of money beyond the reach of VMC's lawful creditors and to related entities and alter egos controlled and/or held by defendants Eric Morris and/or Shirley Morris." (Id. ¶ 25.)

According to the Complaint, in 2011 and 2012, the financial scheme "transferr[ed], divert[ed], and/or secret[ed] more than $1.5 million in monies and inventory away from VMC

coffers and out of the reach of VMC creditors." (Id. ¶ 26.)
Between 2011 and 2013, the financial scheme successfully
transferred, diverted, and secreted a "currently unknown amount
of valuable property and inventory." (Id. at 32.)

    Defendants directed "[p]ortions" of the $1.5 million to be
unlawfully transferred to Eric and Shirley Morris and another
individual.[3] (Id. ¶¶ 27, 35.) Other "[p]ortions" of the $1.5
million were diverted to business entities controlled by Eric
and Shirley Morris, including VM Decorative, LLC, Eric Morris
and Company, LLC, and Von Morris Decorative Hardware, LLC
(collectively, "LLCs"), all of which are named as defendants in
the Complaint. (Id. ¶¶ 27-28.)[4] Plaintiff asserts that
Defendants created the companies during the period leading up
to VMC's insolvency specifically "for the purpose of
facilitating and concealing the unlawful actions undertaken by
defendants." (Id. ¶ 29.)

    The transfers were not properly disclosed. (Id. ¶ 45.)
Plaintiff alleges that the transfers were done with the intent

---

[3] The Complaint states that Defendants also transferred assets
to a "Shirley Zheng," who is not named as a defendant and whose
relationship to the parties is not specified in the Complaint.
(Id. ¶ 35.)
[4] The Complaint also alleges that Defendants created a fourth
company, Kushan Von Morris, Ltd. ("Kushan"), not named as a
party to the action, and transferred some portion of VMC's
assets to Kushan. (Compl. ¶¶ 34, 37-38.)

to hinder, delay, and defraud the creditors of VMC and deprive them of money to which they were entitled. (Id. ¶¶ 42, 43, 70.) He further alleges that the assets were transferred "beyond the reach of VMC creditors" and "for less than adequate and full compensation." (Id. ¶¶ 32, 37.) The transfers "represented . . . all of the assets of VMC" and caused VMC to become insolvent. (Id. ¶ 33.)

Finally, he asserts that Defendants "misappropriated and unlawfully utilized the industry reputation and assets of VMC to the detriment of VMC's lawful creditors. (Id. ¶ 39.)

Plaintiff brings nine causes of action. He asserts claims of fraud under the New Jersey Fraudulent Transfer Act, N.J.S.A. 25:2-25(a) & (b) (Counts One and Two) and a claim under New Jersey's RICO statute, N.J.S.A. 2C:41-2 (Count Three). He also brings common law claims for conspiracy to commit a tort (Count Four); aiding in the commission of a tort (Count Five); conversion (Count Six); accounting (Count Seven); alter ego (Count Eight); and successor liability (Count Nine).

Defendants move to dismiss the Plaintiff's Complaint [Docket Item 5] primarily on the basis that the Complaint does not contain enough factual allegations to plausibly support each cause of action, and fails to plead the allegations of fraud with sufficient specificity to meet the heightened

pleading requirement under Fed. R. Civ. P. 9(b).

**III. STANDARD OF REVIEW**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the nonmoving party. A motion to dismiss may be granted only if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Although the court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Iqbal, 556 U.S. at 678.

In addition, the complaint must contain enough well-pleaded facts to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. The plaintiff must plead sufficient facts to "raise a

reasonable expectation that discovery will reveal evidence of the necessary element," Twombly, 550 U.S. at 556. If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." Id. at 679.

Rule 9(b) of the Fed. R. Civ. P. requires particularized pleading for the conduct underlying fraud claims. Under Rule 9(b), the "circumstances" of the alleged fraud must be pled with enough specificity to "place defendants on notice of the precise misconduct with which they are charged." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). Although the rule states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," and does not require the plaintiff to plead every material detail of the fraud, the plaintiff must use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir.2002) (internal quotations and citations omitted).

**IV. DISCUSSION**

    **A. Fraud (Counts One and Two)**

The Court will apply New Jersey law to all claims.[5] Counts One and Two of Plaintiff's Complaint contain claims under the New Jersey Uniform Fraudulent Transfer Act ("NJUFTA"), N.J.S.A. 25:2-20 et seq. Plaintiff alleges that Defendants fraudulently transferred funds or property in violation of N.J.S.A. 25:2-25(a) and (b).[6]

"The purpose of the [NJUFTA] is to prevent a debtor from placing his or her property beyond a creditor's reach" thereby "deliberately cheat[ing] a creditor by removing his property

---

[5] The entity Defendants in this case are incorporated in Pennsylvania with a principal place of business in Pennsauken, New Jersey. (Compl. ¶ 5.) Neither party has specifically addressed the choice-of-law issue, but Defendants cite to New Jersey state cases, and Plaintiff does not dispute that New Jersey law applies. In the absence of a conflict between the parties, the Court will apply the law of the forum state in which it sits, which is New Jersey.

[6] N.J.S.A. 25:2-25 provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. 25:2-25.

from the jaws of execution." Gilchinsky v. Nat'l Westminster Bank N.J., 732 A.2d 482, 488 (N.J. 1999) (internal quotation and citations omitted). To prove fraudulent conveyance under N.J.S.A. 25:2-25, the plaintiff must allege and prove two elements: first, that the debtor "has put some asset beyond the reach of creditors which would have been available to them at some point in time but for the conveyance," and second, that the debtor transferred property with an intent to defraud, delay, or hinder the creditor. Id. at 488-89 (internal quotations and citations omitted).

Claims under the NJUFTA are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b). MSKP Oak Grove, LLC v. Venuto, 875 F. Supp. 2d 426, 434 (D.N.J. 2012) (Simandle, J.) (citing Ford Motor Credit Co. v. Chiorazzo, 529 F. Supp. 2d 535, 538 (D.N.J. 2008)). Defendants argue that Plaintiff has not pled his claims of fraud with particularity because there is no explanation of the misconduct or the fraudulent acts that Defendants allegedly engaged in. The Court disagrees. Fed. R. Civ. P. 9(b) requires Plaintiff to state the circumstances of the alleged fraud with enough specificity to place Defendants on notice of the "precise misconduct with which [it is] charged." Fredrico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citation and quotations omitted).

11

The Court finds that the Complaint alleges sufficient factual detail to satisfy the heightened pleading standard of Rule 9(b). With respect to the first element of fraudulent conveyance, the Complaint states that Defendants removed substantially all of VMC's assets to the LLCs over the course of two years, placing the assets beyond the reach of VMC's creditors. The Complaint also includes factual allegations to support a reasonable inference that the transfer of assets was done "with an intent to defraud, delay, or hinder the creditor."

New Jersey courts look for certain "badges of fraud," listed in N.J.S.A. 25:2-26, to determine whether the circumstances of a particular transaction give rise to the conclusion that the transferor intended to thwart of evade creditors. Gilchinsky, 732 A.2d at 476-77. Plaintiff has alleged several facts in his Complaint that are recognized "badges of fraud": (1) the debtor, Eric Morris, "retained possession or control of the property transferred after the transfer," N.J.S.A. 25:2-26(b); (2) Morris "removed or concealed assets," N.J.S.A. 25:2-26(g); (3) the assets transferred from VMC to the LLCs were "substantially all the debtor's assets," N.J.S.A. 25:2-26(e); and (4) VMC "became insolvent shortly after the transfer was made." N.J.S.A. 25:2-

12

26(i).

To support the inference that the transfer of assets from
VMC to the LLCs were intended to defraud VMC's creditors,
Plaintiff alleges that the LLCs were created specifically for
the purpose of facilitating the transfer of assets out of VMC
and concealing the scheme. (Compl. ¶ 29.) The transfers
occurred over a period of two years, beginning in 2011 through
the appointment of Plaintiff as the Assignee of VMC's assets
and liabilities (id. ¶ 32), and were "intentionally
mischaracterized as loans and repayments" to the LLCs in order
to conceal the fraudulent scheme. (Id. ¶ 36.) Plaintiff further
alleges that VMC received "less than adequate and full
consideration" for the assets transferred out of its account to
the Defendant LLCs. (Id. ¶ 37.) Between 2011 and 2012,
Defendants transferred at least $1.5 million out of VMC, some
portions of which were transferred to the LLCs, other portions
of which were transferred directly to Eric and Shirley Morris.
(Id. ¶¶ 26-28.) Plaintiff also identifies VMC's accountant,
Mark Wojcik, as playing a role in the fraud.

The Complaint therefore identifies the individuals who
assisted in the fraudulent transfers, identifies the exact
entities and individuals who received VMC's assets, describes
how the fraud was concealed, the time period during which the

13

fraudulent transfers occurred, and the approximate value of the assets transferred. These references "inject precision" into Plaintiff's allegations, and are sufficient to place Defendants on notice of the misconduct with which they are charged. See Cevdet Aksut Ve Ogullari Koll. Sti v. Cavusoglu, No. 14-3362, 2015 WL 4317750, at *7 (D.N.J. July 14, 2015) (stating plausible claim of fraud under N.J.S.A. 25:2-25). Because the Court finds that Plaintiff has pled the circumstances of the fraud with the specificity required under Fed. R. Civ. P. 9(b), the Court will deny Defendants' motion with respect to Counts One and Two and permit the claims of fraudulent conveyance to proceed.

### B. RICO (Count Three)

New Jersey's RICO statute, N.J.S.A. 2C:41-2, makes it unlawful for any person "employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." N.J.S.A. 2C:41-2c.

A claim for the violation of New Jersey's RICO statute requires the plaintiff to allege: (1) the existence of an enterprise; (2) that the enterprise engaged in activities

14

affecting trade or commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that the defendant participated in the conduct of the affairs of the enterprise; (5) that the defendant participated through a pattern of racketeering activity; and (6) that the plaintiff suffered injury as a result of the conspiracy. Galicki v. New Jersey, No. 14-169, 2015 WL 3970297, at *7 (D.N.J. June 29, 2015); Slimm v. Bank of Am. Corp., No. 12-5846, 2013 WL 1867035, at *19 (D.N.J. May 2, 2013).

The New Jersey RICO statute is parallel in structure and substance to the federal RICO statute, 18 U.S.C. § 1962. Because the language of the subsections in both statutes are virtually identical, New Jersey courts will "look to federal decisions interpreting RICO," except where they are inconsistent with the decisions of New Jersey courts. Maxim Sewerage Corp. v. Monmouth Ridings, 640 A.2d 1216, 1219 (N.J. Super. Ct. Law Div. 1993); see also State v. Ball, 661 A.2d 251, 258 (N.J. 1995) ("[B]ecause the federal statute served as an initial model for our own, we heed federal legislative history and case law in construing our statute"). New Jersey courts take a "liberal stance in permitting plaintiffs to plead [New Jersey RICO] violations, rejecting the narrow construction of the federal statute that many circuits, including this one,

15

have adopted." Slimm, 2013 WL 1867035, at *19; Ford Motor Co.
v. Edgewood Props., Inc., No. 06-1278, 2009 WL 150951, at *10
(D.N.J. Jan. 20, 2009).

Defendants contend that Plaintiff has failed to show the
existence of an "enterprise devised and employed to engage in
activities which affected trade and commerce across the borders
of the State of New Jersey by transferring or diverting sums of
money." (Def. Br. at 8.) Defendants also argue that "there is
no explanation of the 'pattern of racketeering activity'
allegedly committed by the Morris Defendants." (Id. at 8.)
Although the Court finds both arguments without merit, it will
nonetheless dismiss Plaintiff's RICO claim without prejudice,
as explained below.

The New Jersey Supreme Court has stated that "enterprise"
is an element distinct from the incidents constituting the
"pattern of racketeering activity," and the existence of both
must be proved in order to establish a RICO violation. State v.
Ball, 661 A.2d 251, 261 (N.J. 1995). The enterprise is the
"vehicle through which the unlawful pattern of racketeering
activity is committed." Nat'l Org. for Women, Inc. v.
Scheidler, 510 U.S. 249, 259 (1994); see also Jaguar Cars, Inc.
v. Royal Oaks Motor Car Co., 46 F.3d 258, 267 (3d Cir. 1995).
"The hallmark of an enterprise's organization consists [] in

16

those kinds of interactions that become necessary when a group, to accomplish its goal, divides among its members the tasks that are necessary to achieve a common purpose." Id. Thus, the enterprise element requires showing a common purpose and an ascertainable structure "support[ing] the inference that the group engaged in carefully planned and highly coordinated criminal activity." Id.; see also Ford Motor Co., 2009 WL 150951, at *11 (noting that under New Jersey's broad interpretation, an enterprise need only be identified by "the existence of an ascertainable structure, . . . or by an informal organization which demonstrates a division of labor among individuals.").

Contrary to Defendants' contention, Plaintiff has alleged sufficient facts showing the existence of an enterprise to overcome a motion to dismiss. The Complaint alleges an unofficial association involving Eric Morris, Shirley Morris, Nick Wojcik, and the three LLCs, in which Eric and Shirley Morris used the LLCs to conceal the the actions of the individual Defendants and as a vehicle to receive unlawful transfers of assets from VMC. In addition to diverting funds to the LLCs, the association also diverted funds directly to Eric and Shirley Morris, all for the common purpose of absconding with VMC's assets and avoiding VMC's creditors. (Compl. ¶ 20.)

17

The Complaint further notes the role of each individual Defendant in the enterprise. It alleges that Eric and Shirley Morris devised the overall fraudulent scheme, and that Wojcik's role in the enterprise was to "assist[] in the design of and execution of the intricate financial schemes devised by defendants Eric Morris and Shirley Morris." (Id. ¶ 22.) The Court finds that Plaintiff has plausibly pled the existence of an enterprise.

Nevertheless, the Court will dismiss Plaintiff's RICO claim because Plaintiff has not identified anywhere in his complaint how the predicate conduct of fraudulent conveyance qualifies as "racketeering activity" under the New Jersey RICO statute. N.J.S.A. 2C:41-1a lists a number of activities that fall within the definition of "racketeering activity." The alleged illegal conduct in this case, fraudulent transfer or fraudulent conveyance under N.J.S.A. 25:2-25, is not listed as one of the enumerated activities, which include, inter alia, murder, kidnapping, gambling, robbery, bribery, extortion, criminal usury, arson, burglary, and fraud in the offering, sale or purchase of securities. Nor does 2C:41-1a list as a "racketeering activity" any violation of the NJUFTA, or Title 25 of the New Jersey statutes.[7] The Court has found only a

---

[7] The full list of "racketeering activity" is as follows:

single case in this district involving a RICO claim predicated

---

      (1) any of the following crimes which are crimes under the laws of New Jersey or are equivalent crimes under the laws of any other jurisdiction: (a) murder; (b) kidnapping; (c) gambling; (d) promoting prostitution; (e) obscenity; (f) robbery; (g) bribery; (h) extortion; (i) criminal usury; (j) violations of Title 33 of the Revised Statutes; (k) violations of Title 54A of the New Jersey Statutes and Title 54 of the Revised Statutes; (l) arson; (m) burglary; (n) theft and all crimes defined in chapter 20 of Title 2C of the New Jersey Statutes; (o) forgery and fraudulent practices and all crimes defined in chapter 21 of Title 2C of the New Jersey Statutes; (p) fraud in the offering, sale or purchase of securities; (q) alteration of motor vehicle identification numbers; (r) unlawful manufacture, purchase, use or transfer of firearms; (s) unlawful possession or use of destructive devices or explosives; (t) violation of sections 112 through 116 inclusive of the "Casino Control Act," P.L.1977, c. 110 (C.5:12-112 through 5:12-116); (u) violation of N.J.S. 2C:35-4, N.J.S. 2C:35-5 or N.J.S. 2C:35-6 and all crimes involving illegal distribution of a controlled dangerous substance or controlled substance analog, except possession of less than one ounce of marijuana; (v) violation of subsection b. of N.J.S. 2C:24-4 except for subparagraph (b) of paragraph (5) of subsection b; (w) violation of section 1 of P.L.1995, c. 405 (C.2C:39-16), leader of firearms trafficking network; (x) violation of section 1 of P.L.1983, c. 229 (C.2C:39-14), weapons training for illegal activities; (y) violation of section 2 of P.L.2002, c. 26 (C.2C:38-2), terrorism; (z) violation of section 1 of P.L.2005, c. 77 (C.2C:13-8), human trafficking; (aa) violation of N.J.S. 2C:12-1 requiring purposeful or knowing conduct; (bb) violation of N.J.S. 2C:12-3, terroristic threats; (2) any conduct defined as "racketeering activity" under Title 18, U.S.C.S. 1961(1)(A), (B) and (D).

N.J.S.A. 2C:41-1a. Although the list includes "forgery and fraudulent practices and all crimes defined in chapter 21 of Title 2C of the New Jersey Statutes," N.J.S.A. 2C:41-1a(1)(o), fraudulent transfer falls under Title 25 of the New Jersey Statutes. See N.J.S.A. Title 25 et seq. (Frauds and Fraudulent Conveyances).

on fraudulent conveyance, and the court in that case did not
directly address whether fraudulent conveyance under N.J.S.A.
25:2-25 qualified as "racketeering activity" for purposes of
RICO. See Cevdet Aksut Ve Ogullari Koll. Sti v. Cavusoglu, No.
14-3362, 2015 WL 4317750, at *7-9 (D.N.J. July 14, 2015).

Accordingly, the Court will dismiss Plaintiff's RICO claim
without prejudice to Plaintiff's right to amend to plead the
appropriate "racketeering activity" under N.J.S.A. 2C:41-1(a).

### C. Conspiracy to Commit a Tort and Aiding in the Commission of a Tort (Counts Four and Five)

The tort of civil conspiracy under New Jersey law contains
the following four elements: (1) a combination of two or more
persons; (2) a real agreement or confederation with a common
design; (3) the existence of an unlawful purpose, or of a
lawful purpose to be achieved by unlawful means; and (4) proof
of special damages. Morganroth & Morganroth v. Norris,
McLaughlin & Marcus, 331 F.3d 406, 414 (3d Cir. 2003) (citing
Naylor v. Harkins, 99 A.2d 849, 855 (1953), modified on other
grounds, 109 A.2d 19 (1954). In addition, one of the parties
must commit "some act that is itself a tort" in pursuance of
the agreement. "Mere agreement to do an act can never alone
amount to a tort." Id. (citation omitted).

Defendants argue that the Complaint fails to explain the
alleged agreement between the Defendants and fails to plead

20

special damages. (Def. Br. at 9.) The Court holds that the facts plausibly show the existence of an agreement between the Defendants, but agrees with Defendants that Plaintiff has failed to allege special damages.

The Complaint alleges that Eric Morris, Shirley Morris, and Mark Wojcik "collaborated and conspired" to form the LLCs for the purpose of accepting diverted assets from VMC in order to avoid paying VMC's creditors. (Compl. ¶ 29.) The Defendants directed the funds to be transferred from VMC to the LLCs and to Eric and Shirley Morris, and VMC received less than adequate and full consideration for the transferred assets. (Compl. ¶¶ 34, 35-37.) Further, in order to conceal the transfers, Defendants "intentionally mischaracterized [them] as loans and repayments." (Compl. ¶ 36.) Taking these allegations as true, the Court finds that they plausibly show an alleged agreement between the Defendants to place VMC's remaining assets out of reach so as to avoid paying VMC's creditors.

The Court will, however, dismiss Plaintiff's claim of civil conspiracy because Plaintiff has not pleaded special damages. "*Special*, as contradistinguished from *general* damage, is that which is the natural, but not the necessary, consequence of the act complained of." Roberts v. Graham, 73 U.S. 578, 580 (1867); see also Wright & Miller, Federal

Practice & Procedure § 1310, at 347 (3d ed. 2004) (special damages are considered "those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct."); Neal v. Honeywell, Inc., 191 F. 3d 827, 832 (7th Cir. 1999) ("The usual consequences of a wrong are 'general' damages, and unusual consequences are 'special.'"); Huyler's v. Ritz-Carlton Rest. & Hotel Co., 6 F.2d 404, 406 (D. Del. 1925) ("Both [special and general] damages must be the natural and proximate consequence of the breach complained of, but general damages are such as inevitably follow, while special damages are such as may or may not follow the breach."). Unlike general damages, which are implied or presumed by the law, special damages "must be specifically pled." Fed. R. Civ. P. 9(g); see also Huyler's, 6 F.2d at 406 (special damages "are not so implied or presumed, and must be specially pleaded and proved."). The purpose underlying Rule 9(g) is "to give notice to the other side of those 'special' damages claimed." Lawley v. Northam, No. 10-1074, 2013 WL 1786484, at *24 (D. Md. Apr. 24, 2013) (internal quotations and citation omitted).

Plaintiff states only that he seeks "actual, proximate and punitive damages" resulting from Defendants' conspiracy to "commit unlawful acts including the fraudulent transfer of

22

monies and properties belonging to VMC." (Compl. ¶ 64.) While the Complaint states that the actual damages from the unlawful transfers were in excess of $1.5 million, nowhere in the Complaint does Plaintiff identify additional special damages resulting from Defendants' conduct. Accordingly, the Court will dismiss without prejudice Plaintiff's claim for conspiracy to commit a tort (Count Four). <u>See</u> <u>Travelodge Hotels, Inc. v. BO-ED Inc.</u>, No. 04-4310, 2007 WL 8053668, at *10 (D.N.J. 2007) (dismissing civil conspiracy claim in part because plaintiff failed to allege any special damages).

Plaintiff pleads the related claim of aiding in the commission of a tort in Count Five. A claim for aiding and abetting arises when one party "'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.'" Restatement (Second) of Torts § 876(b) (followed by <u>Tarr v. Ciasulli</u>, 853 A.2d 921, 929 (N.J. 2004)); <u>see also</u> <u>Failla v. City of Passaic</u>, 146 F.3d 149, 158 (3d Cir. 1998) (noting that New Jersey adopts a definition of civil aiding and abetting liability consistent with the Restatement (Second) of Torts § 876(b)); <u>Judson v. Peoples Bank & Trust Co.</u>, 134 A.2d 761, 767 (1957) (citing Restatement (Second) of Torts § 876(b)); <u>New Jersey ex rel. McCormac v. Qwest Commc'ns, Int'l., Inc.</u>, 904

A.2d 775, 782 (N.J. Super. Ct. App. Div. 2006). Under New
Jersey law, aiding and abetting requires a plaintiff to show
that the principal performed an unlawful act; and the defendant
knowingly and substantially assisted in the principal's
violation, and was generally aware of his role as part of an
overall tortious activity at the time he provided assistance.
Qwest, 904 A.2d at 784 (applying elements recognized by the
Supreme Court in Tarr and to a claim of aiding and abetting
fraud).

Plaintiff has alleged sufficient facts to make out a claim
that Shirley Morris and Nick Wojcik aided Eric Morris (the
principal) in the fraudulent conveyance of VMC's assets. The
Complaint alleges that Shirley Morris and Nick Wojcik knowingly
assisted in fraudulent conveyance by creating the LLCs in order
to facilitate the fraud and by actually directing the transfer
of VMC assets to the LLCs. In addition, Wojcik "assist[ed] in
the design of and execution of the intricate financial schemes"
and used his professional abilities as a CPA to "conceal and
misrepresent VMC's financial activities." (Compl. ¶ 22-23.)
These facts also show that Morris and Wojcik were generally
aware of their roles because they were active participants in
the fraud and helped to devise parts of the fraudulent scheme.
See Qwest, 904 A.2d at 484.

24

Accordingly, the Court will dismiss Court Four (conspiracy) without prejudice and permit Count Five (aiding in the commission of a tort) to proceed.

**D. Conversion (Count Six)**

The Court finds that the Plaintiff has also plausibly pleaded a claim for conversion. At its core, conversion is the "wrongful exercise of dominion or control over the property of another without authorization and to the exclusion of the owner's rights in that property." Chicago Title Ins. Co. v. Ellis, 978 A.2d 281, 288 (N.J. Super. Ct. App. Div. 2009); Commercial Ins. Co. of Newark v. Apgar, 267 A.2d 559, 562 (N.J. Super. Ct. Law Div. 1970). Conversion does not require that defendant have an intent to harm the rightful owner, or know that the money belongs to another. Ellis, 978 A.2d at 288. "It is the effect of the act which constitutes the conversion." Bondi v. Citigroup, Inc., 32 A.3d 1158, 1192 (N.J. Super. Ct. App. Div. 2011) (quoting Charles Bloom & Co. v. Echo Jewelers, 652 A.2d 1238, 1242 (N.J. Super. Ct. App. Div. 1995)).

Contrary to Defendants' assertion, there are specific factual allegations in the Complaint to support Plaintiff's contention that Defendants exercised dominion and control over property they were not entitled to exercise control over. The Complaint alleges that VMC's assets were transferred to LLCs

25

that are controlled or owned by Defendants Eric and Shirley Morris. Although most of the transfers occurred in the period before Delzotti was appointed the Assignee, the Complaint alleges that the transfers occurred "through appointment of the Assignee." (Compl. ¶ 32.) While Plaintiff provides no specific date for when the last transfer occurred, the Court takes these allegations as true and, drawing an inference in Plaintiff's favor, interprets the phrase "through appointment of the Assignee" to mean that at least some of VMC's property was transferred to the LLCs *after* February 20, 2013, the date on which Morris executed the Deed of Assignment and Delzotti obtained ownership over VMC's assets.

The Court will therefore deny Defendants' motion to dismiss with respect to Count Six.

### E. Accounting (Count Seven)

Plaintiff seeks an accounting of all of VMC's financial transactions, "including, without limitation, the transfer of VMC inventory and property" from 2009 onwards. (Compl. ¶ 74.)

"The exercise of the equitable jurisdiction to compel an account rests upon three grounds, -- first, the existence of a fiduciary of trust relation; second, the complicated nature of character of the account; and third, the need of discovery." Borough of Kenilworth v. Graceland Mem. Park Ass'n, 199 A. 716

26

(Chanc. Ct. 1938); see also In re U.S. Mortg. Corp., 492 B.R. 784, 813 (D.N.J. 2013) ("The party seeking to obtain an accounting must establish: (1) a fiduciary or trust relationship; (2) the complicated nature of the character of the account; and (3) the need of discovery.").

Defendants argue that this count must be dismissed because there is "no recognizable cause of action to compel discovery through a Complaint." (Def. Br. at 10.) The Court does not agree. Courts in the Third Circuit and this district have long recognized a claim for accounting based on the existence of a fiduciary duty and the need for discovery. See, e.g., In re U.S. Mortg. Corp., 492 B.R. at 819 (declining to dismiss accounting claim because discovery was needed to determine whether a fiduciary relationship existed); SalandStacy Corp. v. Freeney, No. 11-3439, 2012 WL 3638696, at *6 (D.N.J. Aug. 22, 2012) (dismissing claim for accounting because plaintiffs failed to sufficiently plead the existence of a fiduciary duty); In re Am. Home Mort. Holding, 458 B.R. 161, 171 (D. Del. 2011) ("[A]lleging a need for discovery is sufficient to support a claim for accounting.").

However, because an accounting is an equitable remedy, the plaintiff must show that there is no adequate remedy at law. See Rainbow Apparel, Inc. v. KCC Trading, Inc., No. 09-5319,

2010 WL 2179146, at *6–7 (D.N.J. May 26, 2010) ("'The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is [ ] the absence of an adequate remedy at law.'" (quoting Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478 (1962))). Plaintiff's accounting claim seeks information regarding VMC's financial transactions from 2009 onwards. In other words, Plaintiff appears to be seeking information directly relevant to proving his claim of fraudulent conveyance, among other remaining claims. Because this information is readily obtainable through the normal course of discovery, and Plaintiff has made no showing why discovery under Fed. R. Civ. P. 26(b) provides an inadequate remedy, the Court will dismiss Count Seven without prejudice. See Benefit Control Methods v. Health Care Servs., Inc., No. 97–4418, 1998 WL 22080, at *2 (E.D. Pa. Jan. 16, 1998) (dismissing claim for accounting because the information requested was available through discovery).

### F. Alter Ego (Count Eight)

In Court Eight, Plaintiff seeks to impose alter ego liability on the entity Defendants and individual Defendants to hold them jointly and severally liable for damages.

Piercing the corporate veil, also known as "alter ego liability," is a remedy that is involved when [a subservient]

28

corporation is acting as an alter ego of [a dominant corporation.]" Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir. 2002) (internal quotations and citation omitted). By piercing the corporate veil, a court "may impose liability on an individual or entity normally subject to the limited liability protections of the corporate form." The Mall at IV Group Props., LLC v. Roberts, No. 02-4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005); see also Patel v. Pandya, No. 14-8127, 2015 WL 4523283, at *6 (D.N.J. July 27, 2015). The New Jersey Supreme Court has noted that the purpose of the doctrine is "to prevent an independent corporation from being used to defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise to evade the law." State v. Ventron Corp., 468 A.2d 150, 164 (N.J. 1983).

For the principle to apply, there must be a finding that the "parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent." Id. (citing 1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 41.1 (Perm. ed. 1974 rev.)). Liability is imposed only when the parent has abused the privilege of incorporation by using the subsidiary to perpetuate fraud or injustice. Id. (citing Mueller v. Seaboard Comm. Corp., 73 A.2d 905, 908 (1950)); see

29

also Holzli v. DeLuca Enterprises, No. 11-6148, 2012 WL 983693, at *2 (D.N.J. Mar. 21, 2012) (Simandle, J.) (piercing the corporate veil requires "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.")

Although common ownership and common management will not automatically give rise to common liability, courts will pierce the corporate veil to hold numerous closely held corporations and their owners liable where certain facts suggest that an agency or similar relationship exists between the entities, such as

> "when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting. In such circumstances, in imposing liability upon one or more of a group of 'closely identified' corporations, a court need not consider with nicety which of them' ought to be held liable for the act of one corporation 'for which the plaintiff deserves payment."

Stochastic Decisions, Inc. v. DiDomenico, 565 A.2d 1133, 1136 (N.J. Super. Ct. App. Div. 1989) (quoting My Bread Baking Co. v. Cumberland Farms, Inc. et al., 233 N.E.2d 748, 752 (1968)).

Plaintiff alleges in Count Eight that LLC Defendants "intermingled their corporate funds, dealing, and affairs" and

"failed to follow and abide by appropriate corporate formalities." (Compl. ¶¶ 76-77.) He also alleges that Eric Morris and Shirley Morris "intermingled corporate and personal funds, dealings and affairs" with the entity Defendants "such that said entities were merely an alter ego of defendants Eric Morris and Shirley Morris." (Id. ¶ 78.)

The Court finds Plaintiff's allegations of intermingling plausible, particularly in light of other allegations that the LLCs were all created and controlled solely by Eric and Shirley Morris and that Eric and Shirley Morris directed the transfer of VMC assets to themselves and to each of the three LLCs which they owned. In addition, Plaintiff has alleged that the LLCs were created solely for the purpose of facilitating and concealing the unlawful transfer of assets from VMC. Taking all of these allegations as true, Plaintiff has provided more than a sufficient basis to allow a claim for piercing the corporate veil to proceed. See Motorola, Inc. v. Airdesk, Inc., 2005 WL 894807, at *2 (E.D. Pa. Apr. 15, 2005) (permitting a claim for piercing the corporate veil where complaint alleged intermingling of corporate and personal funds and the use of corporate funds for personal purposes); DiDomenico, 565 A.2d at 1136 (situation where corporate defendants made impermissible payments to their owners provided "the classic criteria for

31

piercing the corporate veil."). However, since the Complaint is void of any allegations that Mark Wojcik owned or controlled any of the LLCs, intermingled personal and corporate funds, or received any assets from the LLCs, alter ego liability will apply only to the entity Defendants, Eric Morris, and Shirley Morris.

The Court will deny Defendants' motion to dismiss this claim.

### G. Successor Liability (Count Nine)

Plaintiff seeks to impose successor liability on the LLCs in Count Nine of the Complaint. He alleges that there was a de facto merger among VMC and the entity Defendants "due to the unlawful diversion and transfer of VMC funds, assets, capital and inventory" to the LLCs. (Compl. ¶ 81.)

A corporation may be considered a successor of another corporation and thus liable for its predecessor's debts when it acquires all or substantially all of the assets of its predecessor and the transaction amounts to a consolidation or merger of the two entities, or the purchasing corporation is a mere continuation of the predecessor corporation. Lefever v. K.P. Hovnanian Enterp. Inc., 734 A.2d 290, 292 (N.J. 1999); Ramirez v. Amsted Indus., Inc., 431 A.2d 811, 815 (N.J. 1981).

Plaintiff has pleaded sufficient facts to demonstrate that

successor liability applies. The existence of a de facto merger
is supported by the fact that VMC and the LLCs shared a common
owner – Eric Morris. Moreover, Plaintiff alleges that VMC and
the LLCs had a "continuity of business operations and
personnel." (Compl. ¶ 82.) Finally, Plaintiff alleges that
Defendants transferred VMC's assets to the LLCs "so that the
defendant entities could continue the business and *de facto*
operations of VMC," and that all of VMC's assets were
ultimately transferred to the LLCs. (Compl. ¶¶ 46, 82.) Taking
these allegations as true and drawing all favorable inferences,
the Court finds that Plaintiff has stated enough facts to
plausibly allege a de facto merger between VMC and the entity
Defendants such that the doctrine of successor liability
applies.[8]

The Court will accordingly deny Defendants' motion to
dismiss Count Nine.

**IV. CONCLUSION**

For the foregoing reasons, the Court will deny Defendant's
motion to dismiss with respect to Counts One and Two

---

[8] Defendants' argument, that the LLCs cannot be a mere
continuation of VMC because VMC was turned over to Delzotti, is
without merit. (Def. Br. at 11-12.) According to the Complaint,
the majority of VMC's assets were transferred to the LLCs
before the Assignment Proceeding took place, and the facts
supporting a de facto merger between VMC and the LLCs existed
even before the assignment.

33

(fraudulent transfer), Five (aiding and abetting in the
commission of a tort), Six (conversion), Eight (alter ego
liability) and Nine (successor liability). The Court will grant
Defendant's motion with respect to Counts Three (RICO), Four
(conspiracy to commit a tort), and Seven (accounting). Counts
Three and Four will be dismissed without prejudice, while Count
Seven is dismissed without prejudice to Plaintiff's right to
obtain full discovery of Defendants' financial information
sufficient to perform an accounting. The accompanying Order
will be entered.


 **September 9, 2015**                    **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                     Chief U.S. District Judge